## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNETTE MCPEEK and JONATHAN K. HERGERT, | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | **2:06-cv-114** |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) | |
| **Defendant.** | ) ) | |

### MEMORANDUM OPINION AND ORDER OF COURT

Before the Court for consideration and disposition are PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION TO ENFORCE THEIR RIGHT TO ADVANCEMENT OF THEIR DEFENSE EXPENSES, with brief in support ("Motion" and "Brief") (*Document Nos. 3 & 4*), DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (*Document No. 20*), and PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION (*Document No. 21*).  The issues have been fully briefed, and the matter is ripe for disposition.  For the reasons which follow, the Motion will be denied without prejudice.

Background

On January 27, 2006, Plaintiffs Annette McPeek and Jonathan K. Hergert ("McPeek" and "Hergert," and collectively "Plaintiffs") filed a three-count Complaint against Defendant Travelers Casualty and Surety Company of America ("Defendant").  Count I seeks a declaration of their right to the advancement of their defense expenses in a related action presently pending before the undersigned.  Counts II and III allege that Defendant's refusal to advance their defense expenses constitutes statutory bad faith under 42 Pa.C.S.A. § 8371 and the common law, respectively.

Plaintiffs are two of the six defendants in *Gilliland et. al. v. Geramita et. al.*, Civil Action

No. 05-1059 ("the *Gilliland* action").  In the *Gilliland* action plaintiffs David L. Gilliland and

Southeastern Imaging Group, LLC ("the *Gilliland* plaintiffs") allege, *inter alia*, that defendants

Anthony J. Geramita ("Geramita"), Hergert, McPeek, Main Medical Holding, LLC, Mid-Atlantic

Imaging Network, Inc., and Main Medical Ventures, LLC (the "Main Medical Defendants")

made a variety of fraudulent and/or negligent misrepresentations and/or omissions in connection

with the purchase of two notes.  As for the first note, the *Gilliland* Complaint alleges that

"Defendant Geramita executed a Promissory Note and Security Agreement (the 'Geramita Note')

in favor of Plaintiff Gilliland in an original principal amount of $550,000."  *Gilliland* Complaint

at p. 3.  As for the second note, the *Gilliland* Complaint alleges that "the Main Medical

Defendants jointly executed a promissory note in favor of Southeastern (the 'Main Medical

Note') in an initial principal amount of $810,000," which "was executed on behalf of each of the

Main Medical Defendants and was issued in return for a loan from Southeastern of $810,000 ..."

*Id*. at 6.  It is alleged that Geramita has repudiated his obligations under the Geramita Note, and

that the Main Medical Defendants have defaulted on the Main Medical Note.  *Gilliland*

Complaint at ¶¶ 32, 35.

On March 3, 2006, Plaintiffs filed the instant Motion and Brief.  Plaintiffs contend that

Defendant is obligated to advance them their defense expenses in the *Gilliland* action pursuant to

Health Care Directors and Officers Policy No. 003LB10349789B ("the Policy").  Motion at 1.

The Complaint in this case alleges that until on or about August 12, 2005, McPeek was

the Treasurer and Chief Accounting Officer of the Main Medical Defendants.  Complaint at ¶¶ 1-

2.  The Complaint also alleges that until on or about August 12, 2005, Hergert was a member of

the Board of Directors of Mid-Atlantic Imaging Network, Inc., and was a member of the Board

of Managers of Main Medical Holding, LLC and Main Medical Ventures, LLC.  Complaint at ¶

3.[1]

---

[1].  The Amended Complaint in the *Gilliland* action alleges essentially the same
relationships between McPeek, Hergert and the Main Medical Defendants.

Defendant contends, generally speaking, that it is not obligated to advance defense costs under the policy, and that the requirements for a preliminary injunction have not otherwise been met.

<u>Standard of Review</u>

A party which seeks a preliminary injunction must demonstrate the following four factors: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004). Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1427 (3d Cir. 1994), *cert. denied,* 514 U.S. 1103 (1995). "The injunction should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *Id.*

<u>Discussion</u>

A.    <u>The Likelihood of Success on the Merits</u>

Plaintiffs' likelihood of success on the merits turns on whether the claims asserted against them are covered by an exclusion in the Policy for claims which "arise out of" liability under a contract.[2] The eight claims asserted in the *Gilliland* action are summarized as follows:

> **Count 1**: Securities Fraud (in violation of 70 P.S. § 1-401, 1-501 and 1-503) in Connection With the Offer and Sale of the Geramita Note (Plaintiff Gilliland v. Defendants Geramita, **Hergert** and Main Medical)
>
> **Count 2**: Fraudulent Misrepresentation in Connection With the Offer and Sale of the Geramita Note (Plaintiff Gilliland v. Defendants Geramita, **Hergert**, **McPeek** and Main Medical)

---

[2] Plaintiffs contend in their briefs that the "contract exclusion" does not apply, while Defendant contends in its brief that it does. The parties have skillfully presented a variety of arguments to support their respective positions regarding the "contract exclusion." Defendant has not invoked any other provision of the Policy in support of its refusal to provide coverage.

**Count 3**: Negligent Misrepresentation in Connection With the Offer and Sale of the Geramita Note  (Plaintiff Gilliland v. Defendants Geramita, **Hergert**, **McPeek** and Main Medical)

**Count 4**: Breach of Contract/ Repudiation of the Geramita Note  (Plaintiff Gilliland v. Defendant Geramita)

**Count 5**: Securities Fraud (in violation of 70 P.S. § 1-401, 1-501 and 1-503) in Connection With the Offer and Sale of the Main Medical Note  (Plaintiff Southeastern v. Defendants Geramita, **Hergert** and the Main Medical Defendants)

**Count 6**: Fraudulent Misrepresentation in Connection With the Offer and Sale of the Main Medical Note  (Plaintiff Southeastern v. **All Defendants**)

**Count 7**: Negligent Misrepresentation in Connection With the Offer and Sale of the Main Medical Note  (Plaintiff Southeastern v. **All Defendants**)

**Count 8**: Breach of Contract/ Default on the Main Medical Note (Plaintiff Southeastern v. The Main Medical Defendants)

*Gilliland* Amended Complaint at p. 9-16 (emphasis added).

The allegations against McPeek and Hergert are, in summary, as follows: At Count I it is alleged that "[i]n offering to issue and sell the Geramita Note to Plaintiff Gilliland for $550,000, ... Defendants Geramita, Hergert and Main Medical made untrue statements of material facts and/or omitted to state material facts necessary in order to make statements made, in light of the circumstances in which they were made, not misleading." *Gilliland* Amended Complaint at p. 9. It is further alleged that absent such misrepresentations, Plaintiff Gilliland would not have agreed to accept the Geramita Note as consideration for a loan of $550,000 to Defendant Geramita and would not have made such loan. *Id*.  Count 2 alleges that Defendants Geramita, Hergert, McPeek and Main Medical "made material false representations and/or material omissions to Plaintiff Gilliland to induce him to accept the Geramita Note." *Id*. at p. 10.  Count 3 alleges that "Defendants Geramita, Hergert, McPeek and Main Medical, under circumstances under which they ought to have known the falsity thereof, both directly and by innuendo, made material false representations and/or material omissions to Plaintiff Gilliland to induce him to accept the Geramita Note." *Id*. at p. 11.  Count 5 concerns the Main Medical Note and alleges that "Defendants Geramita, Hergert and the Main Medical Defendants made untrue statements of

4

material facts and/or omitted to state material facts necessary" to make their statements "not misleading." *Id*. at p. 12-13. Count 6 alleges that "[i]n offering to issue and sell the Main Medical Note to Plaintiff Southeastern," all defendants "made material false representations and/or material omissions to Plaintiff Southeastern to induce it to accept the Main Medical Note." *Id*. at p. 14. Count 7 alleges that all defendants, "under circumstances under which they should have known the falsity thereof, ... made material false representations and/or material omissions to Plaintiff Southeastern to induce it to accept the Main Medical Note." *Id*. at p. 15. The Court observes that neither McPeek nor Hergert has been sued for breach of contract.

Whether Plaintiffs have demonstrated a likelihood of success on the merits turns on whether the claims against them are covered by the following exclusion of coverage:

> This insurance shall not apply to ... any Claim made against any Insured ... **for or arising out of any alleged liability of any Insured under any express contract or agreement**; provided, however, that this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement, and that, for the purposes of this exclusion, an "express contract or agreement" is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making;

Complaint, exh A., section III A(10) (emphasis added).[3] As the Court sees it, the issue is whether the claims asserted against McPeek and Hergert "arise out of" 1) Geramita's alleged repudiation of the Geramita Note and 2) the Main Medical Defendants' default on the Main Medical Note. If so, the contract exclusion applies to the claims. If not, the contract exclusion does not apply, Defendant is obligated to advance defense costs, and Plaintiffs will have

---

[3] The task of interpreting an insurance policy is a function of the court. The goal of that task is to ascertain the intent of the parties as manifested in the language of the written instrument. *Standard Venetian Blind Co. v. American Empire Insurance Company*, 469 A.2d 563, 566 (1983). "Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such a defense." *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 557 Pa. 595, 605-06, 735 A.2d 100, 106 (1999) (citations omitted). Additionally, exclusions in insurance policies are strictly construed against the insurer. *First Pennsylvania Bank, N.A. v. Nat'l. Union Fire Ins. Co*., 580 A.2d 799, 802 (Pa. Super. 1990).

demonstrated a substantial likelihood of success on the merits.

The Court finds and rules that the claims asserted against McPeek and Hergert do not "aris[e] out of any alleged liability of any Insured under any express contract or agreement." The tortious conduct allegedly committed by McPeek and Hergert *preceded* the purchase of the notes by the *Gilliland* plaintiffs, and the purchase of the notes was allegedly induced by and *followed* the tortious conduct. In essence, the *Gilliland* Complaint alleges that McPeek and Hergert made false representations and/or omissions in order to fraudulently induce the *Gilliland* plaintiffs to purchase the notes. In other words, the claims against McPeek and Hergert are based upon (pre-contract) fraud, rather than contractual liability. Similarly, although the causes of action are not determinative, it is relevant that neither McPeek nor Hergert has actually been sued for breach of contract. Given the nature of these allegations and the principle that exclusions in insurance policies are strictly construed against the insurer, it is more appropriate to characterize the claims against McPeek and Hergert as "arising out of" pre-contract misdeeds, rather than "arising out of" the notes (contracts) themselves.

The Court recognizes that perhaps "the Insureds would not have been sued at all had the Main Medical Defendants and/or Geramita paid the amounts owed under the Notes." Defendant's Brief at 6. Defendant may well be correct, but in the Court's view this does not necessarily mean that the tort claims against McPeek and Hergert arise out of the notes (contracts). The Court also recognizes the relationship between the notes and the claims at issue, but is unwilling to interpret "arising out of" so broadly that coverage is precluded upon a showing of "a minimal causal connection between the claims asserted against the Insureds and the excluded matter." *Id*. Although "the claims against McPeek and Hergert were made because they allegedly participated - directly and substantially - in the very activities that led to the execution of the notes," the claims against them nevertheless arise out of conduct which preceded the execution of the notes. *Id*. at 7. Finally, although "the damages sought from the Insureds are the very same contract damages for which the *Gilliland* plaintiffs seek to hold the makers of the

notes liable," the Court does not see this as dispositive. *Id*. at 12.

To summarize, the claims asserted against McPeek and Hergert are not covered by the "contract exclusion" invoked by Defendant, and therefore Defendant is obligated to provide coverage under the Policy. Accordingly, Plaintiffs have demonstrated a substantial likelihood of success on the merits.

B.   <u>Whether Plaintiffs Will Suffer Irreparable Harm if the Injunction is Denied</u>

Under the circumstances the Court is compelled to find that Plaintiffs have not demonstrated that they will suffer irreparable harm if the injunction is denied. Plaintiffs contend in their brief that irreparable harm is presumed in this situation. Plaintiff's Brief at 12. Although some language from *In re WorldCom, Inc. Securities Litigation*, 354 F. Supp. 2d 455 (S.D.N.Y. 2005) arguably supports Plaintiffs' position, the Court does not read the case to stand for the proposition that irreparable harm is presumed. In any event, in the Third Circuit it appears that some actual *evidence* of irreparable harm, *e.g.*, an affidavit, testimony or documents, is required to support a finding of irreparable harm in such a situation as this. *See Ridder v. CityFed Financial Corp.*, 47 F.3d 85, 87 (3d Cir. 1995) ("Appellants *made a strong showing* that, unless defense costs were advanced to them, their ability to defend the RTC action would be irreparably harmed. Appellee made no contrary showing ...") (emphasis added). Therefore, because Plaintiffs have not submitted any evidence from which the Court could find that they will suffer irreparable harm if the injunction is denied, the Court must deny their Motion. However, it will do so without prejudice.

C.   <u>Whether Granting Preliminary Relief Will Cause Greater Harm to Defendant</u>

The Court finds and rules that the grant of preliminary relief will not cause greater harm to Defendant. Although Plaintiffs have made no showing of their own harm, it is highly unlikely that injunctive relief would harm or have a material effect on Defendant, which realizes an

7

annual net income of more than $2 billion dollars.  Plaintiff's Reply at 5 & exh. A. Therefore, the third element of preliminary relief is met.


D.     Whether the Public Interest Favors Preliminary Relief

        The Court finds and rules that in this case the public interest favors preliminary relief. Case law from the Third Circuit, the state courts of Pennsylvania and elsewhere clearly indicates that the enforcement of D & O insurance policies is consistent with public policy and the public interest.  *See Neal v. Neumann Medical Center*, 667 A.2d 479 (Pa. Cmwlth. Ct. 1995) ("The statutory provisions authorizing the advancement of defense costs ... plainly reflect a legislative determination to avoid deterring qualified persons from accepting responsible positions with financial institutions for fear of incurring liabilities greatly in excess of their means ...  It is not the province of judges to second-guess these policy determinations.") (*quoting Ridder v. Cityfed Financial Corporation*, 47 F.3d 85, 87 (3d Cir.1995)); *WorldCom*, 354 F. Supp. 2d at 469 ("Unless directors can rely on the protections given by D & O policies, good and competent men and women will be reluctant to serve on corporate boards."); *Witco Corp. v. Beekhuis*, 38 F.3d 682, 691 (3d Cir. 1994) (the "larger purpose" of indemnification is "to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve.") (quotations omitted).  Case law also reflects that enforcement of contracts by the courts is consistent with public policy and the public interest.  *See Chester City School Authority v. Aberthaw Const. Co.*, 460 Pa. 343, 352 (Pa. 1975) ("Fundamental in our law of contracts is the axiom that parties may write their own contracts, and that *it is the function of the courts to interpret those contracts and to enforce them as made*.") (quotation omitted; emphasis added). Therefore, the public interest favors preliminary relief.

Conclusion

For the reasons hereinabove stated, the Court finds that although the other elements of injunctive relief are met, Plaintiffs have not demonstrated that they will suffer irreparable harm if the injunction is denied.  Accordingly, Plaintiffs' Motion will be denied without prejudice.  An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANNETTE MCPEEK and JONATHAN K. HERGERT,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **2:06-cv-114** |
| | ) | |
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

AND NOW, this 10th day of May, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that Plaintiffs' Motion for a Preliminary Injunction to Enforce Their Right to Advancement of Their Defense Expenses (*Document No. 3*) is DENIED WITHOUT PREJUDICE.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc:     Robert L. Allman, II, Esquire
            Email: allman@marcus-shapira.com
        Scott D. Livingston, Esquire
            Email: livingston@marcus-shapira.com
        Tammy R. Daub, Esquire
            Email: tdaub@rdblaw.com
        Cathy A. Simon, Esquire
            Email: csimon@rdblaw.com
        Gabriela Richeimer, Esquire
            Email: gricheimer@rdblaw.com